**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

————————————————————

MARIO GALLUCCIO, et al.,

                Plaintiffs,          1:15-cv-03423-NLH-AMD

     v.

                                  **OPINION**

PRIDE INDUSTRIES, INC., and
INTERNATIONAL UNION OF OPERATING
ENGINEERS AFL-CIO,

                Defendants.

RESNICK LAW GROUP, P.C.,

                Petitioner.

————————————————————

**APPEARANCES:**

THOMAS ASTON MCKINNEY
CASTRONOVO & MCKINNEY, LLC
71 MAPLE AVENUE
MORRISTOWN, NJ 07960

      *On behalf of Plaintiffs*

GERALD JAY RESNICK
RESNICK LAW GROUP
5 BECKER FARM ROAD
SUITE 410
ROSELAND, NJ 07068

      *On behalf of Petitioner Resnick Law Group, P.C.*

**<u>HILLMAN</u>, District Judge**

    The action between Plaintiffs and Defendants concerned

claims by eight disabled Plaintiffs that their employer and

union discriminated against them by their classification in the

collective bargaining agreement which affected their pay and

benefits, while non-disabled employees were not so classified or

affected.  Those claims ultimately settled, and final settlement

proceeds were distributed as of November 5, 2019.[1]

_____

[1]   On March 29, 2019, the Court entered an order
administratively terminating the case due to the parties'
settlement of the matter, and retained jurisdiction for a
limited period while the parties executed their settlement
documents.  (Docket No. 140.)  The Court extended the retention
of jurisdiction period several times.  Even though the case is
in administrative termination status, the Court has not formally
closed the action, which is relevant to the Court's jurisdiction
to resolve the attorney lien dispute.

    Federal courts "have an ever-present obligation to satisfy
themselves of their subject matter jurisdiction and to decide
the issue *sua sponte*," Liberty Mut. Ins. Co. v. Ward Trucking
Corp., 48 F.3d 742, 750 (3d Cir. 1995), and a "federal court
invokes ancillary jurisdiction over an incident to a matter
where it has acquired jurisdiction of a case in its entirety
and, as an incident to the disposition of the primary matter
properly before it, [the court] may resolve other related
matters which it could not consider were they independently
presented," United States v. Dunegan, 251 F.3d 477, 478-79 (3d
Cir. 2001).  A court's exercise of ancillary jurisdiction is
discretionary.  United Mine Workers of America v. Gibbs, 383
U.S. 715, 726 (1965).

    It does not appear that primary subject matter jurisdiction
can be established under 28 U.S.C. § 1332(a) because the
citizenship of Resnick and most of the plaintiffs is New Jersey.
It also does not appear that primary subject matter jurisdiction
can be established under 28 U.S.C. § 1331 because the attorney
lien dispute does not present a federal question.  Although
ancillary jurisdiction "does not give district courts the
authority to reopen a closed case whenever a related matter
subsequently arises," Dunegan, 251 F.3d at 479, as noted, the
matter has not been closed, but rather placed into
administrative suspension.  Because Resnick filed its notice of
lien petition while the Court still retained subject matter
jurisdiction over the action, the Court's exercise of ancillary
jurisdiction over Resnick's lien petition is proper, and the
Court uses its discretion to do so.  The Court will therefore

Currently before the Court is the Notice of Attorney's Fees Lien Petition filed by Petitioner Resnick Law Group, P.C. ("Resnick"). (Docket No. 141, 148.) Resnick served as Plaintiffs' original counsel in this matter. According to Resnick, on November 20, 2017, Plaintiffs' current counsel, Castronovo & McKinney, LLC ("McKinney"), informed Resnick of its intent to substitute as counsel for Plaintiffs, and on November 27, 2017, Resnick informed McKinney of the amount of its attorney's fees lien pursuant to N.J.S.A. 2A:13-5 prior to McKinney formally taking the case.[2]

---

reopen the action as to the lien petition dispute between Resnick and Plaintiff, but the Court will dismiss with prejudice Plaintiffs' claims against Defendants. (See Docket No. 140, 152, providing that if Plaintiffs and Defendants did not request the Court reopen the action before the expiration of the 60-day administrative termination order, which ultimately was October 8, 2019, the Court would dismiss the matter with prejudice.)

[2] N.J.S.A. 2A:13-5 - Lien for services, provides:

> After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the

Resnick states that when it learned of the March 2019 settlement, on April 15, 2019, Resnick sent each of the Plaintiffs, as well as McKinney, pre-action notices regarding its attorney's lien.  The notices provided:

You retained our firm in February 2015 in connection with claims against Pride Industries.  After extensive discovery and three (3) mediation sessions we were able to secure a settlement offer of $XXX,XXX which was declined by the group.  As a result, we advised you and the other plaintiffs that unfortunately due to the amount of additional time we anticipated it would take to continue with the case, we were not financially able to continue as your counsel without each of the plaintiffs posting an appropriate retainer. In this regard, we wrote you and the other plaintiffs on or about October 31, 2017 that up to that point we had incurred thousands of dollars in expenses, without reimbursement, and that the time we had expended on the file exceeded well over $100,000.

Therefore, after you secured new counsel we advised him that we were asserting an attorneys lien in the amount of $XX,XXX, $11,138 for expenses, and $XX,XXX, which represents one third of the prior settlement offer of $XXX,XXX which was obtained through our efforts.

Therefore, pursuant to Court Rule 1:20A-6, you are hereby advised that our firm intends to file a lawsuit against you to recover the balance due to this office. Further, pursuant to that Rule, you have the right to request Fee Arbitration. If you wish to do so, you should immediately call *Peter J. Kurshan, Esq., Secretary, District VC Fee Arbitration Committee, Chase Kurshan Herzfeld & Rubin, LLC, 354 Eisenhower Parkway, Suite 1100, Livingston, NJ 07039-1022 - 973-422-6577* and request the appropriate forms.

You are further advised that if you do not promptly communicate with the Fee Committee Secretary and file the

---

petition of the attorney or counsellor at law, may determine and enforce the lien.

approved form of request for fee arbitration within thirty
(30) days of receiving this letter, you will lose your
right to initiate fee arbitration.

(Docket No. 141-1 at 18.)[3]

On April 29, 2019, McKinney informed Resnick that
Plaintiffs would not be seeking fee arbitration because the
matter was not yet closed, and Plaintiffs intended to address
the issue with the Court. (Docket No. 141-1 at 21.)

Plaintiffs have challenged the attorney's lien for three
reasons: (1) Resnick's retainer agreement with Plaintiffs is
unethical and unenforceable; (2) Resnick violated the Rules of
Professional Conduct by abandoning Plaintiffs without good cause
because the case became more expensive than anticipated and

---

[3] The parties have either redacted or filed under seal the amount
of the first settlement offer. Plaintiffs have filed a motion
to seal their references to the first settlement offer. (Docket
No. 157.) The Court finds that the factors of Local Civil Rule
5.3(c)(3) to seal references to the exact amount of the first
settlement offer are met, and the Court will grant Plaintiffs'
motion to seal those portions of their filing that refer to the
first settlement amount and any calculation derived from that
settlement amount. See Horizon Pharma, Inc. v. Lupin Ltd., 2017
WL 5068547, at *3 (D.N.J. 2017) (citing Morgan v. Wal-Mart
Stores, Inc., 2015 WL 3882748, at *2 (D.N.J. June 23, 2015))
(granting motion to seal where "disclosure would result in the
dissemination of confidential settlement negotiations and
confidential settlement amounts" and where "the public has no
legitimate interest" in gaining access to such confidential
information in litigation between private parties). Because the
exact amount of the first settlement is not necessary to the
Court's analysis in this Opinion, the Court will similarly
redact the references to the amount of the first settlement and
any relevant calculations based on that settlement.

Plaintiffs refused to settle – even though any added time and expense were directly caused by Resnick's errors; and (3) the principles of *quantum meruit* dictate that Resnick should not be permitted to reap the rewards of McKinney's salvaging of this case because Resnick did not "advance" Plaintiffs' case, and its contribution was nil.  Resnick vigorously denies all of McKinney's contentions.

The Court finds as a matter of law that the retainer agreement was not improper at the time it was entered into.  For Plaintiffs' other two arguments, and with regard to the amount of compensation Resnick is entitled to, if any,[4] the Court will direct the parties to pursue mediation.  If mediation is unsuccessful, the Court will direct the parties to contact the magistrate judge to undertake discovery and proceed to trial in due course, as outlined below.

### 1.   Standard for analyzing an attorney lien

An attorney's right to recover counsel fees under N.J.S.A. 2A:13-5 is an inchoate right, vesting only after a final judgment has been entered, and its enforcement is subject to equitable considerations.  Sauro v. Sauro, 42 A.3d 227, 238 (N.J. Super. App. Div. 2012), cert. denied, 213 N.J. 389 (2013).

---

[4] Plaintiffs do not challenge Resnick's entitlement to its costs.

(explaining that "[a]s with all equitable remedies, the lien is not mechanically imposed upon a mere showing of procedural compliance.  The lien is rooted in equitable considerations, and its enforcement is within the equitable jurisdiction of the courts.  The lien is intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered." (internal quotations and citations omitted)).

"As an inchoate right, the lien is merely a right in the attorney to a lien on any judgment recovered for the attorney's client," and "an attorney's charging lien against his former client attaches to the final judgment."  Id. at 239 (citations omitted); see also Lehigh & N.E.R. Co. v. Finnerty, 61 F.2d 289, 290 (3d Cir. 1932), cert. denied, 287 U.S. 668 (1932) ("The amount of the lien as fixed by the contract must be enforced by the court unless it be inequitable.").  A settlement, rather than a formal judgment, of a former client's claim does not affect an attorney's lien.  See N.J.S.A. 2A:13-5 (giving the attorney "who shall appear in the cause for the party instituting the action ... a lien for compensation, upon his client's action," and that lien "shall not be affected" by settlement of the action).  The lien may be asserted even after the proceeds of the underlying action have been disbursed.

Levine v. Levine, 884 A.2d 222, 227 (N.J. Super. Ct. App. Div. 2005).

"An attorney hired on a contingent fee basis and later discharged before completion of services is not entitled to recover fees on the basis of such contingent agreement; instead, he or she may be entitled to recover on a *quantum meruit* basis for the reasonable value of the services rendered." Toscano Law Firm, LLC v. Haroldson, 2020 WL 2374835, at *11 (N.J. Super. Ct. App. Div. 2020) (citing Glick v. Barclays De Zoete Wedd, Inc., 300 N.J. Super. 299, 310 (App. Div. 1997) (citing Cohen v. Radio-Electronics Officers Union, 146 N.J. 140, 165 (1996)). "[M]any cases describe *quantum meruit* as rooted in 'equitable' principles, [but] it is recognized as a legal remedy." Id. (citing Kopin v. Orange Prod., Inc., 297 N.J. Super. 353, 367 (App. Div. 1997)). *Quantum meruit* is a form of quasi-contract, and the phrase means "as much as [one] deserves." Id. (citing Kopin, 297 N.J. Super. at 367; Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437-38 (1992) (finding *quantum meruit* "entitles the performing party to recoup the reasonable value of services rendered").

The analysis of a *quantum meruit* claim where an attorney has been discharged by the client is as follows:

Because the proper measure of compensation under *quantum meruit* is as much as is deserved, the crucial factor in

8

> determining the amount of recovery is the contribution
> which the lawyer made to advancing the client's cause.
> Thus, if a retiring lawyer cedes to his successor a
> substantially prepared case which resulted from an
> extensive investment of time, skill and funds, the retiring
> lawyer might be entitled to compensation greater than the
> standard hourly rate.  In comparison, if a ceding lawyer's
> work contributed to a recovery by the client, but the new
> attorney was crucial in the success of the case, then the
> predecessor's compensation should be based, at most, upon a
> standard hourly rate.  Finally, if the predecessor's work,
> no matter how extensive, contributed little or nothing to
> the case, then the ceding lawyer should receive little or
> no compensation. Where the attorney is discharged for good
> cause, he or she may not be entitled to any recovery,
> except reimbursement of the reasonable costs incurred in
> the representation.

Id. at *12-13 (quoting Glick, 300 N.J. Super. at 310-11

(citations omitted)).

The "method and mechanics of impressing such a lien" upon a

former client's judgment or settlement is similar to most other

claims - the dispute shall be "tried to a jury, or by the court

if a jury be waived, or disposed of by the court where the facts

are admitted."  Id. at *13 (citing Musikoff v. Jay Parrino's The

Mint, L.L.C., 796 A.2d 866, 873 (N.J. 2002) (quoting H. & H.

Ranch Homes, Inc. v. Smith, 148 A.2d 837, 840 (N.J. Super. App.

Div. 1959)).  The particulars of the "method and mechanics" are

as follows:

> For the guidance of counsel in connection with future
> applications, consistent with the spirit of our present
> rules of practice, we suggest that, where the determination
> or enforcement of an attorney's lien is sought, the
> following procedure ... be employed: The attorney should
> make application to the court, as a step in the proceeding

of the main cause, by way of petition, which shall set
forth the facts upon which he relies for the determination
and enforcement of his alleged lien. The petition shall as
well request the court to establish a schedule for further
proceedings which shall include time limitations for the
filing of an answer by defendants, the completion of
pretrial discovery proceedings, the holding of a pretrial
conference, and the trial. The court shall, by order, set a
short day upon which it will consider the application for
the establishment of a schedule. A copy of such order,
together with a copy of the petition, shall be served upon
defendants as directed by the court. The matter should
thereafter proceed as a plenary suit and be tried either
with or without a jury, in the Law Division[.]

Musikoff, 796 A.2d at 873 (quoting H. & H., 148 A.2d at 840)

(affirming the basic elements of the process articulated in H. &

H., "except that we do not interpret the process to require an

attorney to file and enforce a lien petition prior to settlement

or judgment in the underlying action").[5]

### 2.  Resnick's retainer agreement with Plaintiffs

Plaintiffs argue that their retainer with Resnick is

unethical and unenforceable.  In February 2015, Plaintiffs hired

Resnick to pursue their claims against Defendants and they

entered into a retainer agreement.  Resnick accepted an "initial

retainer of $500 per employee [i.e., $4,000 total for eight

---

[5] The Court notes that even though Resnick filed its notice of
lien in the matter for which it served as Plaintiffs' counsel,
Resnick was not required to.  The New Jersey's attorney lien
statute "does not require an attorney to file a petition to
acknowledge and enforce an attorney's lien prior to settlement
or judgment in the matter that has given rise to the lien
itself."  Musikoff, 796 A.2d at 868.

Plaintiffs], which will go towards preparing a 'demand letter' and/or draft complaint to be sent to the company to determine if the employer is willing to enter into settlement discussions." (Docket No. 156-4 at 2.)  The retainer agreement provides that Resnick would be awarded a contingency fee of 25% of any settlement obtained prior to filing suit, but its contingency fee would increase to 33% if filing a complaint in court was necessary.  (Id.)  For costs, "[e]ach of the plaintiffs shall split his share of associated costs and expenses . . . However, we have agreed that all expenses shall be paid out of the recovery of the case." (Id. at 3.)

The retainer agreement further provides that "depending upon where the matter is filed, we shall have the right to reevaluate the case at the mediation (state court) or the Rule 16(b) conference (federal court), based upon the defenses asserted by the parties at that time, to determine whether we will need to enter into a revised retainer arrangement." (Id. at 2.)  The retainer agreement provides that Plaintiffs "understand and agree" to several provisions, including:

> We may withdraw as your counsel if (a) you fail to meet your financial obligations, (b) it is financially imprudent for us to continue with the case; (c) you fail to reasonably cooperate with us, (d) we reach the point of irreconcilable differences in terms of approach, strategy, or otherwise, (e) we determine, in our sole discretion, that the facts of your case are materially different than

11

you indicated to us, or (f) if we determine that your case
cannot or should no longer be prosecuted.  If we do so, you
will either authorize us to dismiss your case or permit us
to withdraw as your attorneys, and you will recognize our
attorney's lien for services rendered.

If we determine that the facts as presented to us are
significantly different than we obtain during the discovery
phase, or you fail to comply with any of your other
obligations herein, then we shall have the right to
petition the court to be relieved as your attorney, and you
may choose to retain a different attorney . . . .

Each plaintiff shall seriously consider the settlement
recommendation of our office and agrees to be reasonable in
authorizing settlement, based upon counsel's assessment of
the liability and damage issues in the case. If we deem
that you are unreasonable in your settlement demands then
we have the right to ask the court to relieve us as your
counsel.

If you terminate our representation for any reason, we will
have an attorney's lien to be negotiated with your new
attorney, which should have no effect upon the fees and
costs to be paid to your new counsel.

(Id. at 3-4.)

Plaintiffs argue that the retainer agreement is invalid,

and therefore the attorney's lien void, because it (1) failed to

explain all potential charges and costs, and (2) gave Resnick an

unreasonable, one-sided, and arbitrary ability to "reevaluate"

the retainer fees and impose new, substantially higher fees if

Plaintiffs did not agree to accept an unreasonably low

settlement after an initial conference.  (Docket No. 156 at 16.)

To support their position, Plaintiffs cite to Balducci v.

Cige, 223 A.3d 1229 (N.J. 2020).  The New Jersey Supreme Court

summarized the facts and procedural history of that case as follows.  Plaintiff Lisa Balducci retained defendant Brian Cige to represent her son in a bullying lawsuit brought against a school district under New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.  The written retainer agreement seemingly ensured Cige the highest calculation of legal fees under three potential scenarios: (1) his hourly rate multiplied by hours worked, regardless of whether the lawsuit prevailed; (2) a contingent fee of thirty-seven-and-one-half percent (37 1/2%) of the net recovery combined with any statutory attorney's fees awarded under LAD; or (3) the statutory attorney's fees under LAD awarded by judgment or settlement.  The agreement guaranteed that Cige would bear no financial risk but possibly benefit from a windfall of legal fees.

Three years into the LAD litigation, Balducci switched attorneys and instituted a declaratory-judgment action to invalidate the retainer agreement on the ground that Cige procured the agreement in violation of the Rules of Professional Conduct.  After a plenary hearing, which included testimony by Balducci, her son, and Cige, a Superior Court judge voided the agreement, finding that Cige orally promised Balducci that she would not be responsible for legal fees if the lawsuit did not succeed, despite the terms of the retainer agreement that

suggested otherwise.  The court found that Cige was entitled

only to the *quantum meruit* of his legal fees.

The Appellate Division affirmed the trial court's judgment.

The Appellate Division explained the flaws in the retainer

agreement:  "Cige not only failed to explain that the cost of

his services, based on his hourly rate and liberal billing

practices, could approach or exceed [Balducci's] recovery, but

also represented -- or misrepresented as the case may be -- that

he would not charge her his hourly rate.  It found the retainer

agreement unenforceable because Cige did not adequately inform

[Balducci] about [its] ramifications, not because of the

problematic nature of the three fee provisions." Balducci, 222

A.2d at 1237.

The New Jersey Supreme Court elaborated:

At its core, the dispute between Cige and Balducci amounted
to a credibility contest.  After hearing the testimony of
three witnesses, the trial court found that Balducci never
agreed to guarantee Cige his hourly rate if the lawsuit did
not prevail. The trial court credited Balducci's and her
son's testimony that Cige gave oral assurances that,
despite the written language in the retainer agreement,
Balducci would never have to pay the hourly rate. The court
accepted Balducci's assertion that she would not have
retained Cige had he informed her that she would be
responsible for his hourly fees if the lawsuit failed. The
court, moreover, determined that "a reasonable client"
would have viewed the retainer agreement as a typical
contingent-fee arrangement, obligating the client to pay a
percentage of a monetary recovery only if the lawsuit
succeeded.  To the extent that ambiguity rendered the
retainer agreement susceptible to more than one reasonable

interpretation, the agreement must be construed in favor of the client.

Id. at 1242.

The New Jersey Supreme Court continued by noting that the Appellate Division also made a number of pronouncements purportedly imposing new ethical obligations on attorneys handling LAD and other fee-shifting claims, and on appeal Cige and several bar associations asserted that the newly imposed professional obligations were at odds with the current practices of attorneys who handle employment-law and other fee-shifting cases and were not mandated by the Rules of Professional Conduct.  Any new professional obligations, they maintained, should have been vetted through the Court's rulemaking process. Id. at 1232-33.

The New Jersey Supreme Court concluded that the invalidation of the retainer agreement was supported by sufficient credible evidence in the record and therefore affirmed the judgment of the Appellate Division.  It further found that even though "the Appellate Division's concerns over the retainer agreement in this case were understandable, the ethical pronouncements issued in its opinion may have far-reaching and negative effects, not only on employment-law attorneys and attorneys handling fee-shifting claims, but also on their clients."  Id. at 1233.  "Some of those pronouncements

appear too broad and some unsound, and others are worthy of the deliberative process by which new ethical rules are promulgated by this Court." Id.  The New Jersey Supreme Court found that the issues raised in Balducci should be addressed by a newly established ad hoc committee, and that committee of "experienced judges and attorneys will make recommendations on the questions raised in this opinion." Id. at 1248.

This Court finds that Balducci is inapposite to the retainer agreement here.  Plaintiffs argue that the Resnick retainer agreement failed to explain all potential charges and costs, but Plaintiffs do not provide any certifications to explain how they misunderstood the plain language in the retainer agreement or the fees sought by the attorney lien pursuant to the retainer agreement.  While the retainer agreement in Balducci was invalided mainly because of the attorney's oral representations outside of the four-corners of the retainer agreement, here Plaintiffs fail to provide any support to their argument that they were unaware of all potential charges and costs from either the language of the retainer agreement or any oral representations by Resnick.  To the contrary, the amount of fees and costs due to Resnick are plainly set forth in the retainer agreement.

Plaintiffs also argue that the retainer agreement gave
Resnick an unreasonable, one-sided, and arbitrary ability to
"reevaluate" the retainer fees and impose new, substantially
higher fees if Plaintiffs did not agree to accept an
unreasonably low settlement after an initial conference.
Plaintiffs provide no support, other than that conclusory
statement, to show how the reevaluation provision in the
retainer agreement is unethical.

"Attorneys and clients can agree to fee arrangements of
their choice, provided they do not violate the Rules of
Professional Conduct." Balducci, 223 A.3d at 1242. "A retainer
agreement must be fair and understandable, and the fee
arrangement must be reasonable." Id. at 1233. "In determining
the validity of a retainer agreement, a court may consider the
circumstances related to the making of the agreement, including
whether the parties actually negotiated the agreement, the
client's level of sophistication or experience in retaining and
compensating lawyers, and other relevant factors." Id. at 1240.
"The parol evidence rule cannot bar a client from testifying
that she signed a retainer agreement based on an attorney's
material misrepresentation." Id.

Although "an agreement susceptible to two reasonable
interpretations should be construed in favor of the client," and

a court should review a retainer agreement "from the standpoint of a reasonable person in the client's circumstances," id. at 1241, Plaintiffs fail to articulate how the reevaluation provision in retainer agreement could be misunderstood, and how they actually misunderstood it. Plaintiffs further do not point to any Rule of Professional Conduct or other case law to demonstrate how the reevaluation provision violates professional ethics rules.

The newly created *ad hoc* committee established by the New Jersey Supreme Court in May 2020 may address such reevaluation provisions in retainer agreements and provide guidance on their validity, but in February 2015 when Plaintiffs entered into the retainer agreement with Resnick, and even today, no such pronouncement has been made.[6] Consequently, the Court finds no basis to conclude that the retainer agreement violates the Rules of Professional Conduct, and it is therefore valid and enforceable.[7]

---

[6] During its independent research, the Court did not find any law or other references discussing reevaluation provisions in retainer agreements, and neither Plaintiffs nor Resnick has provided the Court with any.

[7] Plaintiffs do not argue that Resnick's lien is invalid because Resnick did not follow the proper procedures to perfect its lien, and the Court finds that Resnick's pre-suit notice to Plaintiffs and its lien petition filed in this Court satisfy the procedural requirements of N.J.S.A. 2A:13-5. See Musikoff, 796

**2.   Determination of what fees Resnik is entitled to**

Having found that the retainer agreement is valid and
enforceable, the Court must consider Plaintiffs' arguments that
Resnick's actions pursuant to the retainer agreement were
unreasonable, and Resnick is not entitled to attorney's fees
because Resnick failed to contribute anything meaningful to the
case.

As a primary matter, as set forth above, Resnick is not
entitled to collect fees based on a contingency calculation as
requested in its lien.  Toscano Law Firm, 2020 WL 2374835 at
*11.  Instead, Resnick may be entitled to recover on a *quantum
meruit* basis for the reasonable value of the services rendered.
Id.  Thus, even though Resnick has a valid retainer agreement
with Plaintiffs pursuant to which it may be entitled to fees,
Resnick's current calculation of its fees is invalid because it

---

A.2d at 873; see also In re Oncology Associates of Ocean County,
LLC, 2015 WL 3649163, at *1 (D.N.J. 2015) (citing Cole, Schotz,
Bernstein, Meisel & Forman, P.A. v. Owens, 292 N.J. Super. 453,
459, 679 A.2d 155 (App. Div. 1996); Hoffman & Schreiber v.
Medina, 224 B.R. 556, 564 (D.N.J. 1998) (explaining that an
attorney who wants to assert an attorney's lien must issue a
pre-action notice to the client and file a petition with the
court, and if these procedural requirements are not satisfied,
the right to an attorney's lien remains unperfected).

seeks fees in the form of a contingency on the original

settlement offer prior to Resnick being relieved as counsel.[8]

Resnick, therefore, must issue a revised lien demand to

Plaintiffs, consistent with N.J. Ct. R. 1:20A-6 (Pre-action

Notice to Client), which sets forth the reasonable value of

Resnick's services rendered.[9]  After Resnick has done so, and if

---

[8] The Court recognizes that the current calculation of Resnick's
fees in its notice of lien is significantly less than Resnick's
fees incurred on a billable hour basis.  As a result, under a
*quantum meruit* analysis, Resnick may demonstrate that it is
entitled to a reasonable value of the fees generated under the
billable hour structure rather than under the contingency
structure, which may result in an increased lien amount.  The
Court further notes that even though an attorney's lien cannot
be premised on a contingency percentage, Resnick's current
notice of lien constrained its demand to a percentage of the
original settlement offer, which, as repeatedly emphasized by
Plaintiffs, is significantly lower than the settlement
Plaintiffs obtained with their new counsel, thus resulting in a
significantly lower fee demand than Resnick may have asserted
against the larger, final settlement under the contingency fee
structure.  See Sauro, 42 A.3d at 238; N.J.S.A. 2A:13-5
(explaining that an attorney's lien against his former client
attaches to the final judgment or settlement).  Of course, a
lien based on a contingency percentage on the initial or final
settlement is not the correct measure for compensation, but the
amount of Resnick's current lien appears to demonstrate that
Resnick did not seek fees unreasonably as argued by Plaintiffs.

[9] See Giarusso v. Giarusso, 187 A.3d 194, 202 (N.J. Super. Ct.
App. Div. 2018) (on a petition for an attorney's fees lien,
reversing the trial court's denial of petitioner's petition
because even though petitioner did not provide sufficient
information necessary to fully engage the analysis of what fees
he was owed, and "the failure to provide such information would
normally preclude an award of fees, it is not uncommon for this
court on remand to allow curing of the defect") (citing
Kingsdorf v. Kingsdorf, 797 A.2d 206, 215 (N.J. Super. Ct. App.
Div. 2002) (where the trial court denied fees because they were

Plaintiffs object to the new lien, Plaintiffs may avail themselves of the fee dispute arbitration provided by N.J. Ct. R. 1:20A-3 (Arbitration).

If the state fee arbitration is not available to Plaintiffs, or if Plaintiffs do not wish to pursue that path, the Court will direct the parties to private mediation in accordance with Local Civil Rule 301.1. See L. Civ. R. 301.1(d) ("Each Judge and Magistrate Judge may, without the consent of the parties, refer any civil action to mediation.").  The determination of the reasonable value of the services rendered by Resnick requires a federal court equivalent to a plenary trial, either with a jury or before the Court, as set forth by the New Jersey Supreme Court in Balducci and Musikoff.  "One of the advantages of mediation is that, if successful, it enables parties to avoid the time and expense of discovery and trial." Kelly v. Noma Outdoor Products, 2004 WL 1724805, at *2 (D.N.J. 2004).  In an effort to facilitate the advantages of mediation, the Court finds that mediation - either through the state fee arbitration procedure or according to Local Civil Rule 301.1 - is the proper course at this stage in the dispute.

---

not supported by a certification, the appellate court reversed and remanded, ordering that the judge give defendant an opportunity to provide the appropriate certification and allow her to renew her request for an award of counsel fees").

## CONCLUSION

For the reasons expressed above, the Court finds that the retainer agreement between Plaintiffs and Resnick is valid and enforceable.  The Court further finds that Resnick has followed the proper procedure for perfecting its attorney's fees and costs lien on the settlement of Plaintiffs' case.  The calculation of the reasonable value of the services rendered by Resnick in the lien, however, is incorrect.  Within 20 days of the date of this Opinion, Resnick shall serve a revised notice onto Plaintiffs with its recalculation of the value of its services on *quantum meruit* basis.  Plaintiffs shall have 30 days[10] to respond by (1) accepting the revised lien, (2) filing for fee arbitration pursuant to N.J.S.A. 1:20A-3, or (3) notifying this Court that they object to the revised lien and they will not, or cannot, proceed with state fee arbitration. If Plaintiffs choose the third path, the Court will issue an

---

[10] The Court provides Plaintiffs with 30 days to respond in order to align with New Jersey's fee arbitration rules.  See N.J. Ct. R. 1:20A-6 ("No lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre-action Notice to a client . . . [and] the notice shall also state that if the client does not promptly communicate with the Fee Committee secretary and file the approved form of request for fee arbitration within 30 days after receiving pre-action notice by the lawyer, the client shall lose the right to initiate fee arbitration.").

order directing the parties to mediation pursuant to Local Civil

Rule 301.1.

    An appropriate Order will be entered.


Dated: _June 29, 2020____

                                    __s/ Noel L. Hillman ____
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.